## SAMUEL TAINTER *versus* JAMES A. LOMBARD.

In 1859, the plaintiff and son, residing in one family, gave their joint and several note for a wagon, which was to remain the property of the former until the note was paid by the son. The wagon was used by the family until August, 1862, when the son took the wagon by force, and sold it to the defendant. In July and Dec., 1862, the plaintiff and son passed mutual receipts "in full of all indebtedness." It was in evidence that the parties to the latter receipt expressly agreed that the matters in relation to the wagon were not included in the receipt. In replevin for the wagon : —

*Held*, that the presiding Judge properly declined to instruct the jury that, if the father was to hold title to the wagon as security for signing the note till paid for by the son, and signed as surety and afterwards gave the receipt of July, 1862, such receipt, if uncontradicted, would be a discharge of the sums so paid and the plaintiff would no longer be entitled to hold the wagon.

ON EXCEPTIONS.

REPLEVIN for a wagon.

The facts are sufficiently stated in the opinions.

*J. A. Peters*, in support of the exceptions.

*A. W. Paine*, for the plaintiff.

CUTTING, J. — Replevin for a wagon. The general issue was pleaded, and a brief statement alleging property in the defendant, who claimed title under one Robert B. Tainter, son of the plaintiff, and the only question presented was one of title, whether the wagon was the property of the father or son.

It appeared in evidence that the wagon was purchased of one Reuben Dunning, to whom the father and son gave their note payable jointly and severally, secured by a mortgage of a yoke of oxen belonging to the former. · That the wagon was to be the father's until paid for by the son. The plaintiff testified that he paid the notes and the son had never reimbursed him in any amount. Whereas the son swore that the notes were paid by himself.

It further appeared that, subsequent to the purchase, there had been some business transactions between them, and, on

Tainter *v.* Lombard.

July 30, 1862, they passed mutual receipts, of which the following was from the plaintiff.

"Received from Robert B. Tainter five dollars in full of all accounts, notes and indebtedness of every description, up to this date, except an obligation given this date for hay, apples, potatoes, &c.                "Samuel Tainter."

There was no evidence that the sums paid for the wagon were included in the receipt, nor any on the subject. But subsequently, on Dec. 3, 1862, after this suit was commenced, the same parties had another settlement and gave mutual receipts,—that from the plaintiff as follows:—

"Rec'd of R. B. Tainter five dollars in full of all accounts, notes, suits and indebtedness of every description, up to this date.                "Samuel Tainter.

"Witness, Daniel B. Hanson."

The attesting witness testified that it was agreed, by the parties at the time, that the matters in suit in this case were not included in that settlement and receipt, and that those must abide the decision of the Court.

The Judge had instructed the jury that,—"If the sale was made to the father, who was to hold the title until paid for by the son, and the son had not so paid, then their verdict should be for the plaintiff. But, if the son had so paid, or if the sale was made to him and the father signed the note as surety merely, without any agreement that he should hold the wagon, then their verdict should be for the defendant." To which rulings no exception is taken. Thereupon the counsel for defendant requested the Judge to instruct the jury that,—"If the father was to hold title to the wagon as security for signing the notes, till paid for by the son, and signed the notes as surety, and afterwards gave the receipt of July 30, 1862, such receipt, if uncontradicted, would be a discharge of the sums so paid, and the plaintiff would be no longer entitled to hold the wagon, which instruction was not given." To which refusal the defendant's counsel has excepted, and the correctness or otherwise of such refusal presents the sole question for consideration.

The case finds that, "after the purchase of the wagon, July 9, 1859, it was used in the family until August 30, 1862, when the son took it away from the plaintiff violently, while riding in it on the highway, and then sold it to defendant." Wherefore it appears, that the wagon had been in the possession of the plaintiff for a period of nearly three years, and was still under his control at the date of the receipt, July 30, 1862. Consequently, the parties to that receipt may have supposed that, after such lapse of time, the property in the wagon had become absolute in the father, and the receipt had no relation to that subject; at least such fact was for the consideration of the jury.

It will be perceived that the Judge had already instructed the jury upon the evidence embracing the receipt; that, if the son had paid the father, they should return their verdict for the defendant. This ruling brought to their consideration all the evidence, both oral and written, which had been produced by both parties at the trial. But the requested instruction was calculated to isolate one species of testimony and make it independent of all the rest; whereas the receipt was subject to an explanation, and evidence had been introduced for that purpose. The plaintiff had sworn "that he had paid the notes and his son had not repaid any part of the money." Besides, the subsequent receipt of Dec. 3, 1862, was of the same tenor as the first, equally as comprehensive; yet the attesting witness, called by the defendant, explained the agreement of the parties at the time, that it was not intended or designed to affect the plaintiff's rights in this suit, then pending; an arrangement somewhat novel, if the first receipt was intended to defeat the plaintiff's claim on, or title to the wagon.

The requested instruction was not only hypothetical, but based upon the idea that the receipt of July 30, 1862, was "*uncontradicted*," whereas the whole evidence tended very strongly to show the fact to be otherwise.

The counsel for the defendant, in asking the request, must have supposed that, because there was no evidence in-

troduced bearing directly and specifically upon the receipt, it must be conclusive, but, if the Judge had so ruled, it would have at once withdrawn all the other evidence from the jury, and their verdict must have been for the defendant,—thus settling the issue upon an isolated point, whereas they were instructed to consider, as it was their province, the whole evidence. *Exceptions overruled.*

DICKERSON, BARROWS and DANFORTH, JJ., concurred.

KENT, J.—The only exception taken, is to the refusal of the Judge to give the specific instruction requested. In such a case, we are only called upon to determine whether the Judge was bound to give the precise instruction requested. But if the requested and refused ruling cover the whole ground, and contain the true rule which should have been given, the party may sustain his exceptions. *Marshall* v. *Oaks,* 51 Maine, 308.

A party must take care to incorporate into his request every element or fact necessary to sustain the principle he contends for.

In the request in this case, the defendant assumes as its basis, that the father was only surety for the son for the payment of the whole price of the wagon bought by the son, that the father held the title to the wagon as security for signing the notes, until paid by the son. On these facts, he asks the Court to instruct the jury, that if afterwards the receipt of July 20th was given, such receipt, if uncontradicted, would be a discharge of the *sums so paid,* and plaintiff would no longer be entitled to hold the wagon.

This request simply regards the father as a surety, holding title until relieved of his liability. The receipt of July 20 is produced to show that all indebtedness from the son to the father was paid and discharged.

Admit such is the true construction, and that it did discharge all debts due for money paid by the father to the son, *then* and on that day existing, *non constat,* that all the liability of the father on the notes had been discharged before

that time. The request does not state this important fact. It may be true, that if, before the date of the receipt, the father had paid a part, it would debar him from any claim for that sum. But this was a question of *title* to the wagon. The father was to hold that title until his whole liability was released or discharged.

The infirmity in the request is, that it does not assume or state that, before the date of the receipt, the father or son had paid the whole debt to Dunning. On the proposition, as presented to the Judge, the father's liability on the note might still continue, and, as long as it did continue, the title was in him.

The request was in substance, that the Judge should say to the jury, that the receipt, uncontradicted, would discharge " the sums so paid" and that, if it did discharge *those sums*, that the *title* to the wagon would thereafter be out of the plaintiff. But this is a *non sequitur*. It might be, if those " sums" had been stated to be all that he was ever liable for, — or that the father had paid all and had, at the time of the receipt, a debt or claim against the son for that money paid, and no remaining liability.

*Exceptions overruled.*

APPLETON, C. J. concurred.